UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bricklayers and Allied Craftworkers Service Corporation, a Minnesota nonprofit corporation,<br><br>      Plaintiff,<br><br>v.<br><br>Dominionaire Contracting, Inc., a Minnesota corporation; and Robert Griffin, individually,<br><br>      Defendants. | File No. 24-CV-04462 (JMB/DLM)<br><br>**ORDER** |

Thomas C. Atmore and Patrick Bower, Martin & Squires, P.A., St. Paul, MN, for Plaintiff Bricklayers and Allied Craftworkers Service Corporation.

      This matter is before the Court on Plaintiff Bricklayers and Allied Craftworkers Service Corporation's (the Service Corporation) motion to amend (Doc. No. 31) the Court's June 13, 2025 Order granting in part the Service Corporation's motion for default judgment (Doc. No. 19).  For the reasons explained below, the Court grants in part the motion to amend the June 13, 2025 order.  The Court construes the motion as a renewed motion for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and now enters judgment for the Service Corporation as set forth below.

## BACKGROUND[1]

      In December 2024, the Service Corporation filed a Complaint against Defendants

---

[1] Upon default, allegations in the complaint are deemed unless they relate to damages.  Fed. R. Civ. P. 8(b)(6); *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010).

1

Dominionaire Contracting, Inc. (Dominionaire) and its owner, Robert Griffin (together, Defendants), in which it alleged that Defendants violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145, and the relevant collective bargaining agreement. (Doc. No. 1 [hereinafter, "Compl."].) The Court has jurisdiction under 29 U.S.C. § 1132(e). The Service Corporation alleges as follows:

The Service Corporation is the fiduciary and servicing and collection agent pursuant to 29 U.S.C. § 1002(21) for certain tax-exempt entities (collectively, BAC Funds) related to the construction trades within the jurisdiction of Bricklayers and Allied Craftworkers Local Union 1 Minnesota/North Dakota/South Dakota (Local 1). (*Id.* ¶¶ 2, 3, 5.) The BAC Funds are "multi-employer plans" as defined under ERISA at 29 U.S.C. §1002(37)(A) that are established to provide pension, health, vacation, training, and other benefits to individuals, and also to the eligible dependents of such individuals, providing labor in the construction trades under the jurisdiction of Local 1 for employers who are bound to a collective bargaining agreement. (*Id.* ¶¶ 3–4.) The Service Corporation is authorized under ERISA to collect and receive employer contributions due to the plan and to enforce all related obligations, including pursuing litigation under 29 U.S.C. § 1132(e)(1). (*Id.* ¶¶ 4–5.)

Dominionaire, a contractor, is a signatory to a collective bargaining agreement (CBA) with Local 1, effective May 1, 2022 through April 30, 2025, and, as a result, it is required to make certain employer contributions to the Service Corporation for all hours worked by its employees on "covered" work during the term of the CBA. (*Id.* ¶¶ 6, 10, 12.) Griffin personally guaranteed Dominionaire's obligations under the CBA. (*Id.* ¶ 11.)

2

The CBA requires an employer-signatory such as Dominionaire to submit monthly reports to the Service Corporation to show the amount it owes in fringe-benefit contributions, and, further, to pay those amounts to the plan. (*Id.* ¶ 14.) Failure to timely make these contributions carries penalties; employers are obligated to pay interest on the unpaid contributions in an amount of 8% per annum as well as liquidated damages in an amount of (as applicable here) 10% of the unpaid contributions. (*Id.* ¶¶ 14, 15 (citing 28 U.S.C. § 1132(g)(2)(C)); Doc. No. 13 at 10, 15.) Delinquent employers will also be liable for costs incurred by the Service Corporation for collections, including reasonable attorney fees and costs. (Compl. ¶ 16 (citing 29 U.S.C. § 1132(g)(2)(D)); Doc. No. 13 at ECF Page 15 ¶ 13.)

Despite these obligations, Dominionaire became delinquent on its fringe-benefit payment obligations from at least May 2024 to August 2024 and in its reporting obligations (and potentially its payment obligations, as well) in at least October 2024. (Compl. ¶¶ 17–18, 26). When the Service Corporation moved for default judgment in this action in March 2025, it submitted evidence that this delinquency continued throughout the pendency of the action, up through at least April 2025. (Doc. No. 13 ¶¶ 12–13; Doc. No. 16 ¶ 6.)

Defendants did not respond to the Service Corporation's several pre-litigation demands. (Compl. ¶ 19; Doc. No. 13 ¶ 14.) Further, Defendants have not answered or otherwise appeared in this action. Upon the Service Corporation's application, the Clerk entered default in the Service Corporation's favor. (Doc. No. 9.)

The Service Corporation moved for default judgment. (Doc. No. 10.) The Court held a hearing on the motion, at which Defendants did not appear. (Doc. No. 18.) The

3

Court then entered an order granting in part the Service Corporation's motion for default judgment, finding Defendants liable for unpaid fringe-benefit contributions for the period May 2024 to April 2025 and ordering Defendants to produce to the Service Corporation accurate fringe-benefit reporting forms for Dominionaire for the months of October 2024 through April 2025, setting a deadline of fourteen days of service of the Order. (Doc. No. 19 at 4–6, 8.) The Court denied the motion to enter partial judgment on damages, which the Service Corporation sought for the period May 2024 through September 2024, and for attorney fees and costs incurred through that time. (*Id.* at 6–7.) The Court indicated that it would determine the amount that Defendants owe to Plaintiff in delinquent contributions, liquidated damages, interest, and reasonable attorney fees and costs based on a renewed motion for entry of default judgment, supported by "a detailed declaration explaining counsel's calculation of the sum-certain of the damages." (*Id.* at 8.)

The Service Corporation now moves the Court to amend the June 13, 2025 order and enter an amended order that includes the direction for entry of judgment. (Doc. No. 31.) The Service Corporation also asks the Court to expand the previously awarded injunctive relief to require Defendants to provide monthly fringe-benefit reporting forms for Dominionaire for May 2025 through September 2025. (Doc. No. 33 at 1–2, 6.)

## DISCUSSION

As a preliminary matter, the Court will consider the Service Corporation's motion to amend the June 13, 2025 order as a renewed motion for default judgment. The Service Corporation cites no authority for amending that June 13, 2025 order, and the closest rule, Federal Rule of Civil Procedure 60, is inapplicable. Because the motion to amend

4

incorporates by reference and supplements the Service Corporation's submissions on its initial motion for default judgment (Doc. Nos. 10–17) and seeks entry of default judgment consistent with these filings (*see* Doc. No. 33 at 5–6; Doc. No. 36), the Court considers it a renewed motion for default judgment. The Service Corporation has filed certificates of service attesting that all of these papers, including the motion to amend and the related notice of hearing, were served on Defendants. (Doc. Nos. 17, 37.) Defendants did not appear at either the initial default judgment hearing motion or the more recent hearing on November 4, 2025. Because the Service Corporation has now satisfied the Court that an entry of default judgment is appropriate, the Court grants the motion to amend in substance by now entering default judgment for the Service Corporation.

  A party seeking default judgment follows a two-step process. First, they must obtain an entry of default from the Clerk of Court. Fed. R. Civ. P. 55(a). Service Corporation has already satisfied this step. (*See* Doc. No. 9.) Second, if the party does not seek a sum certain, as here, the party must apply to the Court for a judgment in their favor. Fed. R. Civ. P. 55(b)(2); *AGCO Fin., LLC v. Littrell*, No. 16-CV-4105 (WMW/FLN), 2017 WL 7369877, at *2 (D. Minn. Dec. 15, 2017) (citation omitted). The district court has discretion in determining whether to enter a default judgment. *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015). Because there is a "judicial preference for adjudication on the merits," the law generally disfavors default judgments. *Id.* (citations omitted). However, in certain situations, a default judgment is required and "is not unfair," such as when the defendant who has been properly served with the summons and complaint does not respond or otherwise appear. *Trs. of the St. Paul Elec. Const. Indus. Fringe*

5

*Benefit Funds v. Martens Elec. Co.*, 485 F. Supp. 2d 1063, 1064–65 (D. Minn. 2007). Given Defendants' failure to answer or otherwise defend themselves, the Court properly considers the motion.

### A. Liability

Upon entry of default, the factual allegations in the complaint are deemed admitted except the allegations relating to the amount of damages; then Court must "consider whether the unchallenged facts constitute a legitimate cause of action" because a party in default does not admit conclusions of law. *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citations omitted); Fed. R. Civ. P. 8(b)(6).

Here, in view of the unchallenged factual allegations, Service Corporation has alleged a legitimate cause of action under ERISA against both Defendants. ERISA requires Dominionaire to fulfill its contribution obligations to the plan under the CBA (to the terms of which Defendants agreed to be bound). 29 U.S.C. § 1145. Further, the CBA requires Dominionaire to comply with certain reporting obligations. Nevertheless, Dominionaire has not fulfilled its reporting and contribution allegations and thus has breached its obligations under the CBA and ERISA. Thus, taken as true, the allegations in the Complaint constitute a legitimate cause of action under ERISA. The Court shall enter default judgment in Service Corporation's favor against both Defendants on the issue of liability for unpaid fringe-benefit contributions for the period May 2024 to April 2025.

In connection with its motion to amend, the Service Corporation asserts that Defendants have also become delinquent "for failing to report and pay for work performed in May 2025 through September 2025." (Doc. No. 35 at 4–5.) The Service Corporation

asks the Court to expand the injunctive relief to require the production of complete and accurate monthly fringe-benefit report forms for May 2025 through September 2025, in addition to the period already covered (October 2024 through April 2025). (Doc. No. 33 at 6.) As noted above, however, the Complaint only alleges that Dominionaire was party to a CBA through April 2025. Therefore, the Court declines to enter default judgment or grant relief at this time as to May 2025 or later. *See Marshall*, 616 F.3d at 852–53 (requiring courts to assess whether the unchallenged factual allegations constitute a legitimate cause of action).[2]

## B. Relief

Next, the Court must determine whether the Service Corporation is entitled to the relief it seeks. Here, the Service Corporation seeks both injunctive relief and damages. As for injunctive relief, the Service Corporation seeks an Order compelling Defendants to produce to the Service Corporation complete and accurate fringe-benefit reporting forms for the months of October 2024[3] through September 2025. (*See* Doc. No. 14 at 10 ¶ 2; Doc. No. 16 ¶ 6; Doc. No. 33 at 6.) As for damages, the Service Corporation seeks an amount equal to the sum of (1) all unpaid fringe-benefit plan contributions; (2) liquidated

---

[2] At the November 4, 2025 hearing, counsel for the Service Company cited the provision in the CBA that, absent timely notice of termination, it shall "be renewed automatically for a further period of twelve (12) months" (Doc. No. 13 at ECF Page 43) and represented that the CBA had auto-renewed. The Complaint, however, does not allege this fact. Should the Service Company amend its complaint or submit a declaration attesting to the fact that the CBA remains in effect through at least September 2025, and submit proof of service on Defendants, the Court will consider amending this Order accordingly.

[3] The Service Corporation received reporting forms for May 2024–September 2024, but it alleges that Defendants have not paid the amounts due on those forms. (Compl. ¶¶ 17–18.)

7

damages on unpaid contributions; (3) accrued interest on unpaid contributions; and (4) reasonable attorneys' fees and costs. (*See generally* Doc. No. 14.) The Service Corporation asks the Court to enter judgment at this time on damages for the period May 2024 through September 2024.

The Court starts with the request for injunctive relief. ERISA provides that injunctive relief is available to redress conduct that violates the terms of ERISA or a plan governed by ERISA. 29 U.S.C. § 1132(a)(3). The Court is free to order any "other legal or equitable relief" as it deems appropriate. *Id.* § 1132(g)(2)(E). Courts may order "[i]njunctive relief requiring a defendant to produce specific records and to cooperate with an audit," as such relief is "consistent with ERISA." *Raines v. Phoenix Corp.*, No. 19-CV-2552 (WMW/KMM), 2020 WL 814189, at *2 (D. Minn. Feb. 19, 2020) (collecting cases). Given the Court's determination of liability in the Service Corporation's favor, and because the requested records are necessary to the Service Corporation's determination of additional amounts owed for unpaid contributions, liquidated damages, and interest, the Court will grant the Service Corporation's request for injunctive relief. Consequently, the Court will order Defendants to produce to the Service Corporation accurate fringe-benefit reporting forms for Dominionaire for the months of October 2024 through April 2025.[4]

The Court next turns to the Service Corporation's request for partial entry of judgment on damages for the period comprising May 2024 through September 2024. The

---

[4] In its June 13, 2025 Order, the Court granted this injunctive relief concerning the missing October 2024 through April 2025 reports. Because Defendants have failed to produce those reports, the Court continues to include this analysis and relief. As noted above, *supra* at n.2, the Court will not, at this time, grant relief for any omissions after April 2025.

8

Court determines, by a preponderance of the evidence, the amount of damages to which the Service Corporation is entitled. *See Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001). The Court may determine damages "by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir. 2008). The Court may rely on documentary evidence to determine the appropriate sum for the default judgment. *See id.* at 916.

The Court previously declined the Service Corporation's request to enter partial judgment on damages, finding that there were inconsistencies between the amounts that the Service Corporation stated were owed and the amounts shown as due on Dominionaire's monthly reports. The Service Corporation submitted documentary evidence purporting to show that Defendants owe the following sums, as calculated from the May 2024 through September 2024 fringe-benefit reports that Dominionaire has produced: $58,554.05 in unpaid contributions for May through August 2024; liquidated damages of 10% on these amounts comprising $5,855.41; and accrued interest in an amount of $5,474.04 as of October 14, 2025, which continues to accrue at a rate of $12.83 per day. (*See* Doc. No. 13 ¶¶ 12–13, 16; Doc. No. 35 ¶ 10.) The Service Corporation has subsequently explained in detail, to the Court's satisfaction, how it reached those amounts owed based on provisions in the CBA concerning the applicable rates and Defendants' own reported hours for the relevant months. (*See* Doc. No. 35 ¶¶ 3–7; Doc. Nos. 35-2 & 35-3.) The Court accordingly finds that these damages are appropriate pursuant to 29 U.S.C.

§1132(g)(2), the CBA, and the Collection Policy (Doc. No. 13 at ECF Pages 7–15).  (*See also* Compl. ¶ 15.)

Pursuant to 29 U.S.C. § 1132(g)(2)(D), the Service Corporation also is entitled to an award of its reasonable attorney fees and costs that it has incurred in pursuing compliance and collection.  (*See also* Compl. ¶ 16 (citing the Collection Policy).)  The Service Corporation seeks a total award of $26,471.50 in fees and $755.56 in costs, exclusive of preparation for the hearing on the motion to amend.  (Doc. No. 35 ¶ 14.)  The Service Corporation submitted documentation for $14,862.35 in attorney fees and $735.98 in costs incurred through May 27, 2025 (Doc. Nos. 16 & 16-1), and for $11,609.15 in fees and $19.58 in costs for May 28, 2025 through October 14, 2025 (Doc. Nos. 35 & 35-4), including information about its counsel's hourly rates.  Counsel also represented at the November 4, 2025 hearing that he had spent two hours preparing for the hearing, at an hourly rate of $410.00, bringing the total fee request to $27,291.50.

The party seeking attorney fees has the burden to prove that its request for attorney fees is reasonable.  *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (citation omitted).  The court has "broad discretion" in determining the amount of a fee award.  *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012).  To calculate reasonable fees, courts typically begin by applying the lodestar method, which takes the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate.  *Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 712 (8th Cir. 2021) (citation omitted).  "After a district court determines the lodestar amount, it may then consider other factors to adjust the fee upward or downward, including

10

the important factor of the results obtained." *Id.* (citation modified). Other factors that courts consider are time, skill, and labor required; customary fees; the amount involved; and the experience, reputation, and ability of the attorneys. *Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 526 (8th Cir. 2020) (citation omitted).

The Court has reviewed the submissions related to attorney fees and costs and, based on a number of factors including the results achieved, the reasonableness of the rates, and the amount in controversy, finds that $27,291.50 in fees and $755.56 in costs is a reasonable amount for this matter.[5]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Plaintiff Bricklayers and Allied Craftworkers Service Corporation's motion to amend the June 13, 2025 Order (Doc. No. 31), incorporating by references its submissions on its March 5, 2025 motion for entry of default judgment (Doc. Nos. 10–16), is GRANTED IN PART, and DENIED IN PART, as follows:

1. The Court directs the Clerk to enter judgment in Plaintiff's favor on the issue of liability.

2. Consistent with Defendants' still-unfulfilled obligations under Doc. No. 19, Defendants immediately must produce complete and accurate monthly fringe-benefit report forms for the period October 2024–April 2025 to Plaintiff.

3. Plaintiff is awarded against Dominionaire Contracting, Inc. and Robert Griffin, jointly and severally, the unpaid fringe benefit contributions shown

---

[5] As counsel for the Service Corporation explained at the hearing in response to the Court's questions, the requested fee amounts include time spent researching matters related to collection efforts. Those tasks are reasonable and fall within the scope of the attorney fee award authorized by the Collection Policy. (Compl. ¶ 16; Doc. No. 13 at ECF Page 15.)

11

to be due and owing on the monthly report forms required by paragraph 2 of this Order, plus interest on those fringe benefit contributions at the rate of eight percent (8%) as provided in the plan, and, further, plus the greater of liquidated damages of ten percent (10%) of the fringe benefit contributions owing or interest on the fringe benefit contributions owing at eight percent (8%) as provided in the plan.

4. Upon submission of the monthly report forms as ordered in paragraph 2 of this Order, if Dominionaire and Griffin fail to make payment of all amounts due and owing at the time of submission of the report forms, including all contributions, interest, the greater of liquidated damages or interest, and Plaintiff's reasonable legal fees and costs, Plaintiff's counsel may then serve and file an affidavit setting forth the amount of the unpaid contributions, the greater of liquidated damages or interest owing on the contributions, interest on the contributions, and setting forth the amount of the reasonable attorney fees and costs incurred since the date of this Order. Defendants may submit any response within **14 days** of service upon them of that affidavit. No reply will be permitted. The Court, upon review and approval of the affidavit and any response by Defendants, will then order amendment of the judgment to include such sums as may be due and owing without further hearing.

5. In addition to the other relief awarded herein, Plaintiff is awarded damages against Dominionaire Contracting, Inc. and Robert Griffin, jointly and severally, in the amount of $70,165.76, representing the amounts due and owing for Covered Work performed in May 2024, June 2024, July 2024, and August 2024, including employer contributions, liquidated damages, and interest to the date of this Order. Interest shall continue to accrue at the rate of $12.83 per day from the date of this Order until the date of entry of judgment, and that amount shall be added to the award.

6. In addition, Plaintiff is awarded its reasonable attorney fees and costs for the work incurred to date in this matter, in the amount of $28,047.06.

7. Plaintiff's counsel shall forthwith mail a copy of this Order to the Defendants by certified mail and shall attempt to effect personal service of this Order on the Defendants. Plaintiff's counsel shall file a certificate of service with the Court within 3 days of effecting service in the manner directed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 5, 2025

*s/ Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court